**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 1 4 2015

JAMES W. McCORMACK, CLERK
By: _____
DLP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

PEGGY KIRKPATRICK, AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF LILLIE MITCHELL, AND ON
BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF
LILLIE MITCHELL                                    **PLAINTIFFS**

vs.                          CASE NO. 4:15CV762-BSM

CAVALIER HEALTHCARE OF ENGLAND, LLC d/b/a
CAVALIER HEALTHCARE OF ENGLAND;
LIMITED HOLDINGS, LLC; BETHEL INVESTMENTS, LLC;
And RANDY MCCHRISTIAN, in His Capacity As
Administrator of Cavalier Healthcare of England       **DEFENDANTS**

### NOTICE OF REMOVAL

Defendants, by and through their attorneys Mitchell, Williams, Selig, Gates & Woodyard,

P.L.L.C., for their Notice of Removal of the above-captioned action to the United States District

Court for the Eastern District of Arkansas, Western Division from the Circuit Court of Lonoke

County, Arkansas, respectfully submits the following:

1.      On or about November 14, 2015, Defendant Bethel Investments, LLC was served

with a Summons and Complaint in the action captioned *Peggy Kirkpatrick, as Special*

*Administrator of the Estate of Lillie Mitchell, and on behalf of the wrongful death beneficiaries*

*of Lillie Mitchell v. Cavalier Healthcare of England, LLC d/b/a Cavalier Healthcare of England;*

*Limited Holdings, LLC; Bethel Investments, LLC; and Randy McChristian, in his capacity as*

*Administrator of Cavalier Healthcare of England,* Case No. 43CV15-608, in the Circuit Court of

Lonoke County.   On or about November 16, 2015, Defendant Limited Holdings, LLC was

served with a Summons and Complaint in the same action.   On or about November 17, 2015,

Cavalier Healthcare of England, LLC d/b/a Cavalier Healthcare of England was served with a

This case assigned to District Judge ___Miller___
and to Magistrate Judge ___Volpe___

Summons and Complaint in the same action. Randy McChristian has not yet been served but is aware of the litigation. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and each Summons are attached hereto as "Exhibit A."

2.      This Notice of Removal is being filed within the time period required by 28 U.S.C. § 1446(b).

3.      Upon information and belief, at the time of the commencement of this action and through the present time, Plaintiff, Peggy Kirkpatrick, was a resident of Pulaski County, Arkansas, and currently lives in Pulaski County, Arkansas.

4.      Defendants, Cavalier Healthcare of England, LLC d/b/a Cavalier Healthcare of England; Bethel Investments, LLC; and Limited Holdings, LLC are Mississippi companies and their principal places of business are located in the State of Mississippi and are conducting business in the State of Arkansas.

5.      Defendant Randy McChristian is a resident of the State of Arkansas; however, as set forth in the affidavit attached hereto as Exhibit B, Mr. McChristian was not an administrator during any portion of the residency of Lillie Mitchell and is therefore not a proper party to this litigation and diversity of citizenship cannot be based on his residency.

6.      As indicated by the "Wherefore" clause contained and set forth in Plaintiff's Complaint, Plaintiff intends to seek compensatory and other damages totaling an amount in excess of the minimum jurisdictional requirements for federal court. Accordingly, Plaintiff's Complaint establishes that the amount in controversy in this action, exclusive of interest and costs, exceeds the sum or value of $75,000.

7.      Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this action is civil in nature; the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs; and diversity of citizenship exists between the parties.

8.      Removal of this case is proper pursuant to 28 U.S.C. § 1441(a) because the court has original federal jurisdiction pursuant to 28 U.S.C. § 1332, and it is an action of a civil nature founded on a claim or right arising under the laws of the United States.

9.      Written notice of the filing of the Notice of Removal will be given to the adverse party as required by law.

10.     Pursuant to 28 U.S.C. §1446(d), a copy of the Notice of Removal is being served on the Plaintiff and filed with the Circuit Court of Polk County.

WHEREFORE, Defendants respectfully remove this action from the Circuit Court of Lonoke County to the United States District Court for the Eastern District of Arkansas, Western Division, pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1441.

Respectfully submitted,

**MITCHELL, WILLIAMS, SELIG,**
**GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
(501) 688-8800 (phone)
(501) 688-8807 (fax)
rbeard@mwlaw.com
kwhatley@mwlaw.com

By: _____
        R.T. Beard, III (Bar No. 71005)
        Karen Whatley (Bar No. 94132)

3

## CERTIFICATE OF SERVICE

I, Karen Whatley, hereby certify that a true and correct copy of the above and foregoing was served on the following, via U.S. Mail, postage prepaid, this 14th day of December, 2015, upon the following:

Brian D. Reddick
Brent L. Moss
Matthew D. Swindle
Robert W. Francis
Daniel K. Yim
**Reddick Moss, PLLC**
One Information Way Suite 105
Little Rock, AR 72202

Robert M. Sexton
**Rainwater Holt & Sexton**
801 Technology Drive
Little Rock, AR 72223

Karen Whatley

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
### _____ 36 _____ DIVISION

### SUMMONS

Case No: 43CV-15-608

**PLAINTIFF(S):**
Peggy Kirkpatrick, as Special Administrator
of the Estate of Lillie Mitchell, and on behalf
of the wrongful death beneficiaries of Lillie
Mitchell

**DEFENDANT(S):**
Cavalier Healthcare of England, LLC d/b/a
Cavalier Healthcare of England;
Limited Holdings, LLC; Bethel Investments, LLC;
and Randy McChristian in his capacity as
Administrator of Cavalier Healthcare of England

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Matthew Swindle
Robert W. Francis
Daniel K. Yim
Joshua C. Rovelli
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**

Cavalier Healthcare of England, LLC
d/b/a Cavalier Healthcare of England
National Registered Agents, Inc. of Arkansas
124 W. Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201

**THE STATE OF ARKANSAS TO DEFENDANT(S):** **Cavalier Healthcare of England, LLC
d/b/a Cavalier Healthcare of England**

### NOTICE

1.      You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached **Complaint**. Also attached are Plaintiff's First Set of Interrogatories and requests for Production of Documents.

2.      The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** or -60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas- from the day you were served with this Summons.

3.      If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____ 11-4-15 _____

Deborah Oglesby
Lonoke County Circuit Clerk
301 North Center Street
Lonoke, AR 72086

By: _____ T. Edge _____ Deputy Clerk

**EXHIBIT
A**

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
_____ 3rd _____ DIVISION

### SUMMONS

Case No: 43CV-15-608

**PLAINTIFF(S):**
Peggy Kirkpatrick, as Special Administrator
of the Estate of Lillie Mitchell, and on behalf
of the wrongful death beneficiaries of Lillie
Mitchell

**DEFENDANT(S):**
Cavalier Healthcare of England, LLC d/b/a
Cavalier Healthcare of England;
Limited Holdings, LLC; Bethel Investments, LLC;
and Randy McChristian in his capacity as
Administrator of Cavalier Healthcare of England

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Matthew Swindle
Robert W. Francis
Daniel K. Yim
Joshua C. Rovelli
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**

Limited Holdings, LLC
Terry D. Little, Registered Agent
265 N. Lamar Boulevard, Suite R
Oxford, Mississippi 38655

**THE STATE OF ARKANSAS TO DEFENDANT(S):   Limited Holdings, LLC**

### N O T I C E

1.     You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached **Complaint**. Also attached are Plaintiff's First Set of Interrogatories and requests for Production of Documents.

2.     The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.     It must be filed in the court clerk's office within **thirty ( 30 ) days** or -60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas- from the day you were served with this Summons.

3.     If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:**     11-4-15

Deborah Oglesby
Lonoke County Circuit Clerk
301 North Center Street
Lonoke, AR 72086

By: T. Edge _____ Deputy Clerk

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
_3⁶__ DIVISION

## SUMMONS

Case No: 43CV15 608

**PLAINTIFF(S):**
Peggy Kirkpatrick, as Special Administrator
of the Estate of Lillie Mitchell, and on behalf
of the wrongful death beneficiaries of Lillie
Mitchell

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Matthew Swindle
Robert W. Francis
Daniel K. Yim
Joshua C. Rovelli
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**DEFENDANT(S):**
Cavalier Healthcare of England, LLC d/b/a
Cavalier Healthcare of England;
Limited Holdings, LLC; Bethel Investments, LLC;
and Randy McChristian in his capacity as
Administrator of Cavalier Healthcare of England
**TO DEFENDANT:**

Bethel Investments, Inc.
Michael Cunningham, Registered Agent
3130 Endville Road
Belden, Mississippi 38826

**THE STATE OF ARKANSAS TO DEFENDANT(S):    Bethel Investments, Inc.**

## NOTICE

1.     You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the
attached **Complaint**. Also attached are Plaintiff's First Set of Interrogatories and requests for Production of
Documents.

2.     The attached **Complaint** will be considered admitted by you and a judgment by default may be entered
against you for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present
your defense. Your pleading or answer must meet the following requirements:

A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.     It must be filed in the court clerk's office within **thirty ( 30 ) days** or -60 days if you are incarcerated in
any jail, penitentiary, or other correctional facility in Arkansas- from the day you were served with this Summons.

3.     If you desire to be represented by an attorney you should immediately contact your attorney so that an
Answer can be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____11-4-15_____

Deborah Oglesby
Lonoke County Circuit Clerk
301 North Center Street
Lonoke, AR 72086

By: _____ Deputy Clerk

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
## 3rd DIVISION

## SUMMONS

### Case No: 43CV-15-608

**PLAINTIFF(S):**
Peggy Kirkpatrick, as Special Administrator
of the Estate of Lillie Mitchell, and on behalf
of the wrongful death beneficiaries of Lillie
Mitchell

**DEFENDANT(S):**
Cavalier Healthcare of England, LLC d/b/a
Cavalier Healthcare of England;
Limited Holdings, LLC; Bethel Investments, LLC;
and Randy McChristian in his capacity as
Administrator of Cavalier Healthcare of England

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Matthew Swindle
Robert W. Francis
Daniel K. Yim
Joshua C. Rovelli
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**

Randy McChristian
921 Charmont Drive
Charleston, Arkansas 72933

**THE STATE OF ARKANSAS TO DEFENDANT(S):     Randy McChristian**

### N O T I C E

1.     You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached **Complaint**. Also attached are Plaintiff's First Set of Interrogatories and requests for Production of Documents.

2.     The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.     It must be filed in the court clerk's office within **thirty ( 30 ) days** or -60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas- from the day you were served with this Summons.

3.     If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____ 11-4-15

Deborah Oglesby
Lonoke County Circuit Clerk
301 North Center Street
Lonoke, AR 72086

By: _____ T. Edge _____ Deputy Clerk

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
### 3ᵈ DIVISION

Peggy Kirkpatrick, as Special Administrator
of the Estate of Lillie Mitchell, and on behalf
of the wrongful death beneficiaries of Lillie Mitchell                    PLAINTIFF

vs.                              CASE NO. 43CV-15-608

Cavalier Healthcare of England, LLC d/b/a
Cavalier Healthcare of England;
Limited Holdings, LLC; Bethel Investments, LLC;
and Randy McChristian in his capacity as
Administrator of Cavalier Healthcare of England                    DEFENDANTS

2015 NOV  4  PM 1 52

DEBORAH COLESSY
LONOKE CO. CIRCUIT CLERK
BY _____ T. Edge
DEPUTY CLERK

## COMPLAINT

COMES NOW, the Plaintiff, Peggy Kirkpatrick, as Special Administrator of the Estate of Lillie Mitchell, deceased, and on behalf of the wrongful death beneficiaries of Lillie Mitchell, by and through her attorneys, Reddick Moss, PLLC, and for her causes of action against the Defendants, states as follows:

### JURISDICTIONAL STATEMENT

1.    Peggy Kirkpatrick is the Special Administrator of the Estate of Lillie Mitchell pursuant to the Circuit Court of Lonoke County, Probate Division, Order Appointing Special Administrator dated April 14, 2015, a copy of which is attached hereto as **Exhibit A**, and brings this action on behalf of the Estate Lillie Mitchell.

2.    Peggy Kirkpatrick is Lillie Mitchell's daughter.

3.    Other than hospitalizations, Lillie Mitchell was a resident of Cavalier Healthcare of England (sometimes referred to as "facility"), a nursing home located at 400 Stuttgart Highway, England, Lonoke County, Arkansas, from approximately August 30, 2014 until January 2, 2015.

4.      Defendant Cavalier Healthcare of England, LLC is a foreign limited liability company that engaged in business in the state of Arkansas and owned, operated, managed, and held the license for the nursing home located at 400 Stuttgart Highway, England, Lonoke County, Arkansas, known as Cavalier Healthcare of England. The causes of action made the basis of this suit arise out of such business conducted by Defendant Cavalier Healthcare of England, LLC in the ownership, operation, management, licensing and/or control of the facility during the residency of Lillie Mitchell. The agent for service of process for Defendant Cavalier Healthcare of England, LLC is National Registered Agents, Inc. of Arkansas, 124 W. Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

5.      Defendant Limited Holdings, LLC is a foreign limited liability company that engaged in business in the state of Arkansas and owned, operated, controlled, managed and/or provided services to Cavalier Healthcare of England at times pertinent to this lawsuit. Defendant Limited Holdings, LLC exercises operational and managerial control over Cavalier Healthcare of England and does business in Arkansas through the actions of its agents, employees, staff, and others at the nursing home. At all times material to this action, Defendant Limited Holdings, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The causes of action made the basis of this suit arise out of such business conducted by Defendant Limited Holdings, LLC in the ownership, operation, control, management, and provision of services for the facility during the residency of Lillie Mitchell. The agent for services of process on Defendant Limited Holdings, LLC is Terry D. Little, 265 N. Lamar Boulevard, Suite R, P.O. Box 1396, Oxford, Mississippi 38655.

6.      Defendant Bethel Investments, Inc. is a foreign limited liability company that engaged in business in the state of Arkansas and owned, operated, controlled, managed and/or

2

provided services to Cavalier Healthcare of England at times pertinent to this lawsuit. Defendant Bethel Investments, Inc. exercises operational and managerial control over Cavalier Healthcare of England and does business in Arkansas through the actions of its agents, employees, staff, and others at the nursing home. At all times material to this action, Defendant Bethel Investments, Inc. was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The causes of action made the basis of this suit arise out of such business conducted by Defendant Bethel Investments, Inc. in the ownership, operation, control, management, and provision of services for the facility during the residency of Lillie Mitchell. The agent for services of process on Bethel Investments, Inc. is Michael Cunningham, 3130 Endville Road, Belden, Mississippi 38826.

7.     Upon information and belief, Defendant Randy McChristian was the Administrator of Cavalier Healthcare of England during the residency of Lillie Mitchell. The causes of action made the basis of this suit arise out of Mr. McChristian's administration of Cavalier Healthcare of England during the residency of Lillie Mitchell. Defendant Randy McChristian was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. Defendant Randy McChristian may be served with process at his last known address:  921 Charmont Drive, Charleston, Arkansas 72933.

8.     The Defendants collectively controlled the operation, planning, management, and staffing of the Facility. The authority exercised by the Defendants over the Facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policies and procedures used by the Facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and

3

certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

9.    The Defendants operated as a joint venture/enterprise for the purpose of streamlining and furthering their similar business interests, as the Facility, Central Arkansas Nursing Centers, Inc. and Nursing Consultants, Inc. were owned by and controlled by the same owners, managers, and decision makers.

10.    At all relevant times mentioned herein, the Defendants owned, operated and/or controlled the operation of the Facility, either directly or through the agency of each other and/or other agents, subsidiaries, servants, or employees.

11.    Because the Defendants named herein and others were engaged in a joint venture/enterprise during relevant times, the acts and omissions of each participant in the joint venture/enterprise are imputable to all other participants. The actions of the Defendants and each of its servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

12.    Whenever the term "Nursing Home Defendants" is used throughout this Complaint, that term collectively refers to and includes the following Defendants: Cavalier Healthcare of England, LLC d/b/a Cavalier Healthcare of England, Limited Holdings, LLC, and Bethel Investments, LLC.

13.    Whenever the term "Administrator Defendant" is used throughout this Complaint that term refers to Defendant Randy McChristian.

14.    Whenever the term "Defendants" is used throughout this Complaint, that term collectively refers to and includes all named Defendants.

15.    Jurisdiction and venue are proper in this Court.

### BACKGROUND AND FACTUAL ALLEGATIONS

4

16.     This case arises from Defendants' systemic failures to have sufficient staff at Cavalier Healthcare of England to meet the needs of all of its residents which caused Lillie Mitchell to suffer the injuries described in more detail below.

17.     Persons admitted to a nursing facility have limitations caused by physical deterioration, cognitive decline, the onset or exacerbation of an acute or chronic illness or condition, or other related factors. They need nursing care, medical treatment, and rehabilitation to maintain functional status, increase functional status, or live safely from day to day. Many such residents are elderly, disabled, confined to their beds or unable to rise from a bed or chair independently, and unable to groom, feed, toilet, or clean themselves. Consequently, many nursing home residents rely upon nursing home staff for not only skilled nursing care and treatment, but also essential primary care (herein "Basic Care") including:

a)      toileting assistance;

b)      incontinence care and changing of wet and soiled clothing and linen;

c)      assistance transferring to and from bed and wheelchair;

d)      assistance with dressing and personal hygiene;

e)      assistance with bathing;

f)      assistance with turning and repositioning residents in bed or chair;

g)      feeding assistance; and

h)      exercises/passive range of motion ("ROM") exercises.

18.     Basic Care is primarily delivered by Certified Nursing Aides or "CNAs."

19.     Defendants limited the number of CNA staff on duty at Cavalier Healthcare of England and rendered the facility incapable of delivering the Basic Care that residents needed. While the intent may have been to control costs, the effect on resident care was dramatic. With

5

the limited budgets for CNA staffing, the supply of CNA hours fell far short of the demand for care by the resident population.

20.     The profound difference between the amount of services that Defendants promised and claimed to provide and the amount of services that Cavalier Healthcare of England could have provided is at the heart of this case.

21.     Interviews with residents' families and former employees, and analysis of survey results reported by the Office of Long Term Care will all confirm the chronic understaffing of Cavalier Healthcare of England and the Defendants failure to provide the Basic Care services that they were paid to provide.

22.     More specifically, CNA understaffing led to a pattern and practice of failing to provide Basic Care Services at Cavalier Healthcare of England throughout the residency of Lillie Mitchell. For example, Cavalier Healthcare of England:

  a)     Failed to regularly provide toileting, incontinence care, and basic hygiene care, leaving dependent residents in dirty diapers, dirty clothes, and dirty beds for hours at a time;

  b)     Failed to timely respond to call lights rung by residents. Residents were left to soil themselves while waiting for assistance; others fell while attempting to walk to the bathroom unaided;

  c)     Failed to re-position bed-bound and immobile residents; many residents remained in the same position for hours at a time, which can and sometimes did result in painful, infection-prone pressure sores;

  d)     Failed to undertake ROM exercises – moving their joints and limbs, and assisting vulnerable residents who could walk or exercise. Without this assistance, residents lost mobility, rendering them even less independent;

  e)     Failed to wash and bathe dependent residents;

  f)     Failed to get dependent residents up, dressed, and out of bed; and

  g)     Failed to assist dependent residents with meals. Without help, some residents were unable to eat or drink in the time allotted, and some of them suffered weight loss and dehydration.

6

23.     These tell-tale signs confirm that Cavalier Healthcare of England did not provide the Basic Care that was required and paid for, and highlight the very human toll of understaffing. Defendants' staffing practices saved them the cost of labor, but cost residents their dignity and comfort, and jeopardized their safety. Residents and their families and former employees will confirm that because CNAs were not available:  residents at Cavalier Healthcare of England were left for long periods in their own urine and waste; were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; were deprived of food and water; and suffered falls. The failure to provide this care not only violated the law and the promises made by Defendants, it also degraded residents and increased their risk of serious negative health consequences such as those suffered by Lillie Mitchell.

24.     As even more specific proof of the pattern of failing to meet the Basic Needs of the residents at Cavalier Healthcare of England, surveys conducted by the Office of Long Term Care provide proof that the Defendants were on notice and aware of problems with resident care. For example, in a November 21, 2014 survey conducted in the midst of Lillie Mitchell's residency, the facility was cited for numerous deficiencies relating to the administration of nursing care, including:

a)     Failure to write and use policies that forbid mistreatment, neglect and abuse of residents and theft of residents' property (resulting in immediate jeopardy to resident safety);

b)     Failure to provide necessary care and services to maintain the highest well being of each resident (resulting immediate in immediate jeopardy to resident safety);

c)     Failure to administer care in an acceptable way that maintains the well-being of each resident (resulting in immediate jeopardy to resident safety);

d)     Failure to make sure that each resident gets a nutritional and well balanced diet, unless it is not possible to do so; and

7

e)    Failure to hire only people with no legal history of abusing neglecting or mistreating residents, report and investigate any acts or reports of abuse, neglect or mistreatment of residents.

Similarly, on January 23, 2015, the facility was cited for:

a)    Failure to hire only people with no legal history of abusing neglecting or mistreating residents, report and investigate any acts or reports of abuse, neglect or mistreatment of residents;

b)    Failure to develop policies that prevent mistreatment, neglect, or abuse of residents or theft of resident property; and

c)    Failure to provide necessary care and services to maintain the highest well being of each resident.

22.    The deficiencies cited in the surveys from the Office of Long Term Care, such as those referenced above specific to Cavalier Healthcare of England, are for failures to meet standards established by a comprehensive group of federal and state regulations that regulate all aspects of care in nursing homes.

A.    **Federal requirements.**

25.    As part of the Omnibus Reconciliation Act of 1987, Congress enacted the Nursing Home Reform Act, 42 U.S.C. §§ 1395i-3, 1396r ("NHRA"), which establishes minimum standards for nursing facilities participating in, and seeking funding from, the Medicaid and Medicare programs.

26.    Cavalier Healthcare of England is a nursing facility as defined by the NHRA. 42 U.S.C. § 1396r(a).

27.    The NHRA mandates that nursing facilities "operate and provide services in compliance with all applicable Federal, State, and local laws and regulations…and with accepted professional standards and principles which apply to professionals providing services in such a facility." 42 U.S.C. § 1396r(d)(4)(A). Likewise, 42 U.S.C. § 1320c-5(a)(2) requires all health care providers, including nursing facilities, to ensure that all services for which they submit

8

claims for Medicaid payment are "of a quality which meets professionally recognized standards of health care."

28.     Under the NHRA, nursing home operators that participate in Medicaid or Medicare must conduct comprehensive clinical assessments of each nursing home resident's needs, which are reflected in the MDS. 42 C.F.R. § 483.20(b)-(c). The MDS documents and scores each resident's level of impairment or infirmity, forms the foundation of the resident's care plan, and defines the day-to-day services the resident needs. 42 C.F.R. § 483.20(b). Given the MDS's importance to residents' assessment and care, various regulations ensure that an MDS accurately reflects each resident's status and needs – requiring that the MDS be signed and certified, and imposing penalties for falsifying an MDS. 42 C.F.R. § 483.20(g)-(k).

29.     The MDS allows the nursing home to catalog exactly which Basic Care services are required by its residents with great specificity, as well as the number of staff members who assist when assistance is needed.

30.     Federal regulations require that all nursing homes have sufficient numbers of nursing staff, including CNAs, "to provide nursing and related services to attain or maintain the highest practical physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care." 42 C.F.R. § 483.30(a). Further, every nursing home, as a condition of payment and participation in the Medicaid and Medicare program, must:

> provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans: (i) ...licensed nurses; and (ii) [o]ther nursing personnel.

42 C.F.R. § 483.30(a)(1). "Other nursing personnel" includes CNAs, which are specifically included as "nurse aids" in 42 C.F.R. § 483.75(e)(1).

9

31.    Thus, federal regulations make clear that:  (a) a nursing home must provide sufficient nursing staff – including CNAs – to meet the needs documented in the MDS and care plans of its residents, and (b) the necessary level of staffing, therefore, depends upon the specific needs of and level of care required by the home's resident population.

**B.    State requirements.**

32.    Under Arkansas law, the Department of Human Services which licenses nursing facilities to operate, "shall not issue or renew a license of a nursing facility unless that facility employs the direct-care staff needed to provide continuous twenty-four-hour nursing care and service to meet the needs of each resident of the nursing facility and the staffing standards required by all state and federal regulations." Ark. Code. Ann. § 20-10-1402(a).

33.    Under Arkansas law, there are specific staffing standards regarding the minimum number of direct-care staff required in nursing facilities and "the staffing standard required...shall be the minimum number of direct-care staff required by nursing facilities and shall be adjusted upward to meet the care needs of residents." Ark. Code. Ann. § 20-10-1402(b)(1). Therefore, a facility which provides staffing at the minimum number of direct-care givers required is not in compliance with Arkansas law as those staffing numbers "shall be adjusted upward to meet the care needs of residents." *Id.*

34.    Under Arkansas law,

> ...all nursing facilities shall maintain the following minimum direct-care staffing-to-resident ratios:
>
> (1) One (1) direct-care staff to every six (6) residents for the day shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;
>
> (2) One (1) direct-care staff to every nine (9) residents for the evening shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

10

>   (3) One (1) direct-care staff to every fourteen (14) residents for the
>   night shift. Of this direct-care staff, there shall be at least one (1)
>   licensed nurse to every eighty (80) residents.

Ark. Code. Ann. § 20-10-1403(a).

35.     Thus, like the federal regulations, Arkansas law makes clear that:  (a) a nursing

home must provide sufficient nursing staff – including CNAs – to meet the needs of its residents,

and because the minimum staffing requirements "shall be adjusted upward to meet the care needs

of residents," (b) the necessary level of staffing, therefore, depends upon the specific needs of

and level of care required by the home's resident population.

**Injuries Suffered by Lillie Mitchell**

36.     Other than hospitalizations, Lillie Mitchell was a resident of Cavalier Healthcare

of England from approximately August 30, 2014 until January 2, 2015.

37.     Defendants were aware of Ms. Mitchell's medical condition and the care she

required when they represented that they could adequately care for her needs.

38.     In an effort to ensure that Lillie Mitchell and other residents whose care was

partially funded by the government were placed at Cavalier Healthcare of England, Defendants

held themselves out to the Arkansas Department of Human Services (DHS) and the public at

large as being:

>   a)   Skilled in the performance of nursing, rehabilitative and other medical
>        support services;
>
>   b)   Properly staffed, supervised and equipped to meet the total needs of their
>        nursing home residents;
>
>   c)   Able to specifically meet the total nursing home, medical and physical
>        therapy needs of Lillie Mitchell and other residents like her; and
>
>   d)   Licensed by DHS and complying on a continual basis with all rules,
>        regulations and standards established for nursing homes.

11

39. Defendants failed to discharge their obligations of care to Lillie Mitchell with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Ms. Mitchell, as more fully set forth below. Defendants knew that their facility could not provide the minimum standard of care to the weak and vulnerable residents of Cavalier Healthcare of England. The severity of the recurrent negligence inflicted upon Ms. Mitchell while a resident of the facility accelerated the deterioration of her health and physical condition and resulted in physical and emotional injuries. While a resident at Cavalier Healthcare of England, Lillie Mitchell sustained multiple injuries including, but not limited to, the following:

     a) Multiple falls with injury;

     b) Limb ischemia of the right leg;

     c) Multiple urinary tract infections ("UTIs");

     d) Sepsis; and

     e) Death.

40. The injuries sustained by Lillie Mitchell, as well as the conduct specified below, caused her to lose her personal dignity and to suffer extreme and unnecessary pain, anguish, and emotional trauma.

41. Defendants controlled the operation, planning, management and quality control of Cavalier Healthcare of England. The authority exercised over the nursing facility included, but was not limited to, budgeting, marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by Cavalier Healthcare of England, federal and state reimbursement, quality care assessment and compliance, licensure and

12

certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

42. Defendants operated and managed Cavalier Healthcare of England so as to maximize profits by reducing staffing levels below that needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing facilities. Thus, Defendants knowingly and/or with reckless disregard for the consequences of their actions caused staffing levels at their facility to be set so that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents. Upon information and belief, Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and disregarded patient acuity levels as well as the minimal time required to perform essential functions. These acts of malfeasance directly caused injury to Lillie Mitchell and other residents of Cavalier Healthcare of England and were known to Defendants.

43. The acts and omissions of Defendants were motivated by a desire to increase the profitability by reducing expenditures for needed staff training, supervision, and care to levels that would predictably lead to severe injury.

44. Plaintiff alleges that, during Lillie Mitchell's residency at Cavalier Healthcare of England, Ms. Mitchell was under the care, supervision and treatment of Defendants and that the injuries complained of were proximately caused by the acts and omissions of the Defendants.

45. Defendants were vicariously liable for the acts and omissions of all persons or entities under their control, either directly or indirectly, including employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing or contributing to the injuries of Lillie Mitchell.

## CAUSES OF ACTION AGAINST THE NURSING HOME DEFENDANTS

### COUNT ONE: NEGLIGENCE

13

46.     Plaintiff incorporates the allegations contained in Paragraphs 1 – 43 as if fully set forth herein.

47.     The Nursing Home Defendants owed a non-delegable duty to residents, including Lillie Mitchell, to provide adequate and appropriate custodial care and supervision, which a reasonably careful nursing home would provide under similar circumstances.

48.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Lillie Mitchell, to exercise reasonable care in providing care and services in a safe and beneficial manner.

49.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Lillie Mitchell, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

50.     The Nursing Home Defendants owed a non-delegable duty to residents, including Lillie Mitchell, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

51.     The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Lillie Mitchell, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

52.     The Nursing Home Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse and neglect of Lillie Mitchell. The negligence of Nursing Home Defendants includes, but is not limited to, the following acts and omissions:

               a)     The failure to follow physician orders to ensure that residents were free of significant medication errors;

14

b)      The failure to ensure that Ms. Mitchell attained and maintained her highest level of physical, mental, and psychosocial well-being;

c)      The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Ms. Mitchell;

d)      The failure to increase the number of nursing personnel to ensure that Lillie Mitchell received timely and accurate care assessments, and proper treatment, medication and diet;

e)      The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Ms. Mitchell throughout her residency;

f)      The failure to increase the number of nursing personnel at the facility to ensure that Lillie Mitchell:

        1)     Received timely and accurate care assessments;

        2)     Received proper treatment, medication, and diet; and

        3)     Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

g)      The failure to adequately screen, evaluate, and check references, test for competence and use ordinary care in selecting nursing personnel to work at the facility;

h)      The creation of and/or the failure or refusal to identify and correct the injuries, conditions, and circumstances described in paragraph 37 and exhibited by Ms. Mitchell;

i)      The failure to terminate employees at the facility assigned to Ms. Mitchell who were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Arkansas Department of Human Services and the Office of Long Term Care;

j)      The failure to assign nursing personnel at the facility duties consistent with their education and experience based on:

        1)     Lillie Mitchell's medical history and condition, nursing and rehabilitative needs;

        2)     The characteristics of the resident population residing in the area of the facility where Lillie Mitchell was a resident; and,

3)      The nursing skills needed to provide care to such resident population.

k)      The failure by the members of the governing body of the facility to discharge their legal and lawful obligation by (1) ensuring that the rules and regulations designed to protect the health and safety of residents, such as Lillie Mitchell, as promulgated by the Arkansas Department of Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis and (2) ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

l)      The failure to adopt adequate guidelines, policies, and procedures of the facility for documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of the facility, an employee of the facility or any interested person;

m)      The failure to maintain medical records on Lillie Mitchell in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate care plans of care and treatment; and

n)      The failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents.

53.      A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Lillie Mitchell.

54.      The Nursing Defendants further breached their duty of care to Lillie Mitchell by violating certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

a)      By failing to comply with rules and regulations promulgated by the Arkansas Department of Human Services, Division of Social Services, Office of Long Term Care, pursuant to authority expressly conferred by Act 28 of 1979 (Ark. Code Ann. § 20-10-202, *et seq.*) and published in the Long Term Care (LTC) Provider Manual on April 8, 1984, and the

16

supplements thereto, and federal minimum standards imposed by the
United States Department of Health and Human Services;

b)    By failing to provide the necessary care and services to attain or maintain
the highest practicable, physical, mental and psychosocial well-being of
Lillie Mitchell in accordance with the comprehensive assessment and plan
of care;

c)    By failing to ensure a nursing care plan based on Lillie Mitchell's
problems and needs was established that contained measurable objectives
and timetables to meet her medical, nursing, and mental and psychosocial
needs as identified in her comprehensive assessment;

d)    By failing to review and revise Lillie Mitchell's nursing care plan when
her needs changed;

e)    By failing to treat Lillie Mitchell courteously, fairly and with the fullest
measure of dignity;

f)    By failing to provide sufficient nursing staff and nursing personnel to
ensure that Lillie Mitchell attained and maintained her highest practicable
physical, mental and psychosocial well-being;

g)    By failing to provide a safe environment;

h)    By failing to administer the facility in a manner that enabled it to use its
resources effectively and efficiently to attain or maintain the highest
practicable physical, mental and psychosocial well-being of each resident;
and

i)    By criminally abusing and neglecting Lillie Mitchell and by failing to
report that abuse in violation of the Adult and Long-Term Care Facility
Resident Maltreatment Act, Ark. Code Ann. §§ 12-12-1701 *et seq.*

55.    The Nursing Home Defendants were further negligent by infringing upon and

depriving Lillie Mitchell of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201 *et seq.*

including, but not limited to, the following:

a)    The right to receive adequate and appropriate health care and protective
and support services, including social services, mental health services, if
available, planned recreational activities, and therapeutic and rehabilitative
services consistent with the resident care plan for Lillie Mitchell, with
established and recognized practice standards within the community, and
with rules as adopted by federal and state agencies, such rights include:

17

1)    The right to receive adequate and appropriate custodial service, defined as care for Lillie Mitchell which entailed observation of diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

2)    The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Ms. Mitchell or her designee or legal representative, which included a comprehensive assessment of the needs of Ms. Mitchell, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b)    The right to regular, consultative, and emergency services of physicians;

c)    The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d)    The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Ms. Mitchell, and not directly furnished by the licensee;

e)    The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f)    The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g)    The right to be free from mental and physical abuse, and from physical and chemical restraints;

h)    The right of Ms. Mitchell to have privacy of her body in treatment and in caring for her personal needs;

i)    The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j)    The right to participate in social, religious, and community activities;

k) The right to the obligation of the facility to keep full records of the admissions and discharges of Ms. Mitchell and her medical and general health status, including:

1) medical records;

2) personal and social history;

3) individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

4) making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; and

5) The right to be treated courteously, fairly, and with the fullest measure of dignity.

56. A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Lillie Mitchell's injuries, which were foreseeable. Ms. Mitchell suffered personal injury including extreme pain and suffering, mental anguish, disfigurement, disability, degradation, loss of personal dignity, and emotional distress.

57. As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, emotional distress, and loss of life in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiffs are entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE

19

58.     Plaintiff incorporates the allegations contained in Paragraphs 1 – 55 as if fully set forth herein.

59.     The Nursing Home Defendants are either medical care providers as defined by Ark. Code Ann. § 16-114-201(2) and/or liable for medical care providers as defined by Ark. Code Ann. § 16-114-201(2).

60.     The Nursing Home Defendants owed a non-delegable duty to residents, including Lillie Mitchell, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

61.     The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Lillie Mitchell, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

62.     The Nursing Home Defendants failed to meet the applicable standards of care and violated their duty of care to Lillie Mitchell through mistreatment, abuse and neglect. The Nursing Home Defendants failed to adequately supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Lillie Mitchell the requisite care, and as a result, negligent acts occurred as set forth herein. The medical negligence of Nursing Home Defendants includes, but is not limited to, the following acts and omissions:

        a)     The failure to ensure that Lillie Mitchell received the following:

              1)     Timely and accurate care assessments;

              2)     Proper treatment, medication and diet;

              3)     Necessary supervision; and

              4)     Timely nursing and medical intervention due to a significant change in condition.

20

b) The failure to provide, implement, and ensure adequate nursing care plan revisions and modifications as the needs of Lillie Mitchell changed;

c) The failure to provide, implement and ensure that an adequate nursing care plan for Lillie Mitchell was followed by nursing personnel;

d) The failure to provide Lillie Mitchell with adequate and appropriate nursing care, treatments, and medications;

e) The failure to ensure that Lillie Mitchell was assessed in order to receive adequate and proper nutrition, fluids, and therapeutic diet;

f) The failure to provide adequate care and treatment to Lillie Mitchell; and

g) The failure to adequately and appropriately monitor Lillie Mitchell and recognize significant changes in her health status.

63. A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Lillie Mitchell's injuries, which were foreseeable. Ms. Mitchell suffered personal injury, including excruciating pain and suffering, mental anguish, emotional distress, and loss of life.

64. The Nursing Home Defendants were negligent and reckless in breaching the duties owed to Lillie Mitchell under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint.

65. As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Lillie Mitchell suffered injuries as described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, emotional distress, and loss of life in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

21

## COUNT THREE: BREACH OF THE ADMISSION AGREEMENT

66.     Plaintiff incorporates the allegations contained in paragraphs 1–63 as if fully set forth herein.

67.     Before being admitted to Cavalier Healthcare of England, Lillie Mitchell was required to enter into a Resident Admission Agreement, whereby the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment to Ms. Mitchell in exchange for valuable consideration.

68.     Lillie Mitchell, or those acting on her behalf, did what the Agreement for Care required of her in that valuable consideration was paid for the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Defendants promised to provide.

69.     The Nursing Home Defendants breached their contractual duties by failing to provide the care and services as described in the agreement, causing damage to Lillie Mitchell. As a result, the Plaintiff is entitled to, and seeks judgment for, the recovery of compensatory damages.

70.     The Nursing Home Defendants are also liable for all consequential damages, because the Nursing Home Defendants knew, or should have known, that breaches of the admission agreement would result in consequential damages to Lillie Mitchell, and, under the circumstances, the Nursing Home Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the admission agreement. Plaintiff, therefore, seeks judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Nursing Home Defendants to provide the care, goods, and services promised under the admission agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

22

71.     Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the admissions agreement would naturally and probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

72.     Plaintiff, for good cause, is unable to attach a copy of the actual admissions agreement upon which this claim is based, because it is in the possession of the Nursing Home Defendants.

### COUNT FOUR: BREACH OF THE PROVIDER AGREEMENT

73.     Plaintiff incorporates the allegations contained in paragraphs 1-70 as if fully set forth herein.

74.     Upon becoming a resident of Cavalier Healthcare of England, Ms. Mitchell, as a Medicare and/or Medicaid recipient, became a third-party beneficiary of the contract or provider agreement between the Nursing Home Defendants and the state and federal governments, an example of which is attached as **Exhibit B**.

75.     For consideration duly paid by Ms. Mitchell, or on her behalf, the Nursing Home Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein. In addition, by entering into the agreement, the Nursing Home Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State." The Nursing Home Defendants further agreed that "the rights and privileges of the

23

residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the

rights of the residents. The parties to the contract agreed "that failure to act in a manner

consistent with those rights and privileges shall constitute an immediate breach of agreement."

76.    As the name implies, the provider agreement exists to pay for and provide for

resident, personal, or custodial care and professional nursing care. The provider agreements

between the Nursing Home Defendants and the state and federal government were clearly

intended to benefit the residents of Cavalier Healthcare of England, including Lillie Mitchell.

77.    In addition to the representations made by Nursing Home Defendants in the

provider agreement, on the MDS that is submitted for each Medicaid recipient quarterly, the

provider is required to certify the accuracy and truth of the MDS assessment as a condition of

payment:

> I certify that the accompanying information accurately reflects
> resident assessment information for this resident and that I
> collected or coordinated the collection of this information on the
> dates specified. To the best of my knowledge, this information was
> collected in accordance with applicable Medicare and Medicaid
> requirements. I understand that this information is used as a basis
> for ensuring that residents receive appropriate and quality care, and
> as basis for payment from federal funds. I further understand that
> payment of such federal funds and continued participation in the
> government-funded health care programs is conditioned on the
> accuracy and truthfulness of this information, and that I may be
> personally subject to or may subject my organization to substantial
> criminal, civil, and/or administrative penalties for submitting false
> information. I also certify that I am authorized to submit this
> information by this facility on its behalf.

The provider agreement makes the submission of accurate MDSs a condition of payment for the

Medicaid program.

78.    The Nursing Home Defendants breached the provider agreement and committed

multiple acts of nonfeasance in failing to provide the care, goods, and services to industry

standards, as required by law and as agreed, including but not limited to:

24

a)   Nonfeasance in failing to provide, as promised, the care and services for Ms. Mitchell to attain or maintain her highest practicable physical, mental, and psychosocial well-being, in accordance with a comprehensive assessment and plan of care;

b)   Nonfeasance in failing to provide, as promised, dietary services, including special diets, supplemental feedings, special delivery preparation, assistance, and equipment required for preparing and dispensing oral feedings and special feeding devices;

c)   Nonfeasance in failing to provide, as promised, personal or custodial services and nursing care;

d)   Nonfeasance in failing, as promised, to implement policies and procedures so as to prevent infringement or deprivation of Ms. Mitchell's rights as a resident of a long term care facility;

e)   Nonfeasance in failing to provide, as promised, assistance to Ms. Mitchell in developing and carrying out a plan of care;

f)   Nonfeasance in failing to comply, as promised, with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

g)   Nonfeasance in failing to staff Cavalier Healthcare of England with sufficient personnel to adequately meet the needs of Ms. Mitchell, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

79.   As a result of the Nursing Home Defendants' breach of the provider agreement, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

80.   The Nursing Home Defendants are also liable for all consequential damages, because the Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to Lillie Mitchell, and, under the circumstances, the

Nursing Home Defendants should have understood that they had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

81.    Plaintiff seeks judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Nursing Home Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

82.    Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

83.    Plaintiff, for good cause, is unable to attach a copy of the actual provider agreement upon which this claim is based, because it is in the possession of the Nursing Home Defendants.

## COUNT FIVE: DECEPTIVE TRADE PRACTICES

84.    Plaintiff incorporates the allegations contained in Paragraphs 1–81 as if fully set forth herein.

85.    At all times pertinent to this cause of action, Lillie Mitchell was an "elder person" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiff has a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

86.    At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) provides that it is unlawful to:

a)   Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

   1)   Physical infirmity; or

   2)   A similar factor; and

b)   Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

87.   Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

88.   On information and belief, the Nursing Home Defendants made statements to Arkansas consumers regarding the services provided and quality of care at Cavalier Healthcare of England that may have, tended to, or did deceive or mislead Arkansas consumers.

89.   For example, the Nursing Home Defendants were required by federal and state regulations to devise a care plan for each resident based upon each resident's individual needs. On information and belief, the Nursing Home Defendants communicated these care plans to residents and their families, including Lillie Mitchell, which may have, tended to, or did lead them to believe that the Nursing Home Defendants would deliver – and had the staff and resources to deliver – the care outlined in the plans. These representations were false and misleading.

90.   Additionally, the Nursing Home Defendants made misrepresentations regarding the care they provide in marketing materials directed to consumers in Arkansas.

91.   The Nursing Home Defendants' trade practices also are, and have been throughout the residency of Lillie Mitchell, unconscionable, because the nursing home residents,

such as Ms. Mitchell, constitute a vulnerable population: they are elderly, ill, infirm, and often deteriorating. These residents often face the double burden of dependency and isolation. The Defendants accept these vulnerable residents for admission, and then knowingly fail to provide sufficient levels of staffing to provide the care required. Many nursing home residents require assistance with most or all of the ADLs or basic care needs. Once admitted, they lack the autonomy or ability to seek alternative care. Residents who are unable to get in and out of bed on their own, for example, have few options when the nursing home at which they are living fails to provide the care they need. Thus, residents cannot "vote with their feet," as consumers might in other contexts. Some residents are not even able to voice a complaint.

92.     The Nursing Home Defendants also engage in, and have engaged in throughout the residency of Ms. Mitchell, substantively unconscionable trade practices by providing care that is so inadequate to meet the needs of residents that it results in a gross disparity between the value received by the residents for the services provided and the cost of the services.

93.     The Nursing Home Defendants knew that they were not meeting, and did not have sufficient CNA staff to meet, the Basic Care needs of their residents as mandated by state and federal laws and regulations.

94.     As described above, the Nursing Home Defendants received repeated deficiencies related to failures of Basic Care in Office of Long Term Care surveys. They received these deficiencies despite, on information and belief, taking steps to increase staffing and prepare staff for surveys ahead of time – steps that would lead surveyors to believe levels of care provided were higher than they actually were during non-survey times.

95.     The conduct of the Nursing Home Defendants, as described herein, constitutes a deceptive practice in violation of the Deceptive Trade Practices Act. The Nursinh Home Defendants engaged in an unconscionable, false, and/or deceptive act or practice in business,

28

commerce and/or trade by marketing themselves and holding themselves out to the public and Lillie Mitchell as being able to meet the needs of elder residents of Cavalier Healthcare of England. The Nursing Home Defendants profited greatly as a result of their deceptive trade practices, but the Nursing Home Defendants were aware that Cavalier Healthcare of England could not meet the needs of its residents, including Lillie Mitchell.

96.     As a direct and proximate result of the Nursing Home Defendants' wrongful conduct, Plaintiff has suffered actual damages.

## CAUSES OF ACTION AGAINST THE ADMINISTRATOR DEFENDANT

### FACTUAL ALLEGATIONS

97.     Plaintiff incorporates the allegations contained in paragraphs 1–94 as if fully set forth herein.

98.     Randy McChristian was the Administrator of Cavalier Healthcare of England during the residency of Lillie Mitchell.

99.     As administrator of Cavalier Healthcare of England, Randy McChristian was responsible for ensuring that the facility complied with all state and federal regulations related to nursing facilities. Mr. McChristian had a duty to administer the facility in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychological well-being of each resident. The nursing facility, under the leadership of its administrator, is also required to operate and provide services in compliance with all applicable federal, state, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such facilities. Defendant Randy McChristian breached the duty of care he owed to Lillie Mitchell.

### NEGLIGENCE

29

100.   Plaintiff incorporates the allegations contained in paragraphs 1–97 as if fully set forth herein.

101.   Randy McChristian owed a duty to the residents, including Lillie Mitchell, to provide services as a reasonable administrator within accepted standards for a nursing home administrator.

102.   The Administrator Defendant breached the duties owed to the residents of Cavalier Healthcare of England, including Lillie Mitchell, by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides, and as such, the nurses and nurses' aides were unable to provide Lillie Mitchell the care she required. The negligence of the Administrator Defendant includes, but is not limited to, the following acts and omissions:

   a)   Failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Lillie Mitchell received appropriate nursing care;

   b)   Failure to ensure that Lillie Mitchell was provided with basic and necessary care and supervision;

   c)   Failure to adequately hire, train, supervise, and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Lillie Mitchell received care, treatment, and services in accordance with state and federal law;

   d)   Failure to assign nursing personnel at Cavalier Healthcare of England duties consistent with their education and experience based on:

      1)   Lillie Mitchell's medical history and condition, nursing, and rehabilitative needs;

      2)   The characteristics of the resident population residing in the area of the facility where Lillie Mitchell was a resident; and

      3)   Nursing skills needed to provide care to such resident population;

   e)   The failure to provide sufficient numbers of qualified personnel to ensure that Lillie Mitchell was provided with a safe environment and was

30

protected from abuse and mistreatment by the correct use of reasonable safety measures;

f)    The failure to properly in-service and orient employees to pertinent resident care needs to maintain the safety of residents;

g)    The failure to protect Lillie Mitchell from abuse and neglect; and

h)    The failure to provide adequate supervision to the nursing staff so as to ensure that Lillie Mitchell received adequate and proper care.

103.    A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Lillie Mitchell.

104.    As a direct and proximate result of the Administrator Defendant's negligent conduct, Plaintiff asserts a claim for judgment for all compensatory damages against the Administrator Defendant, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, emotional distress and loss of life in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which the Plaintiff is entitled by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peggy Kirkpatrick, as Special Administrator of the Estate of Lillie Mitchell, prays for judgment against Defendants as follows:

1.    For damages in an amount adequate to compensate the Plaintiff for the injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

2.    For all general and special damages caused by the alleged conduct of Defendants.

3.    For the costs of litigating this case.

31

4.     For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204.

5.     For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Lillie Mitchell and to deter Defendants and others from repeating such atrocities.

6.     For all other relief to which Plaintiff is entitled.

Respectfully submitted,

Peggy Kirkpatrick, as Special Administrator of the Estate of Lillie Mitchell

By: _____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
Matthew D. Swindle (AR 2012168)
Joshua C. Rovelli (2014128)
Daniel K. Yim (2014202)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:    (501) 907-7790
Facsimile:    (501) 907-7793

and

Robert M. Sexton (1996106)
**Rainwater Holt & Sexton**
6315 Ranch Drive
Little Rock, AR 72223
Telephone:    (501) 868-2500
Facsimile:    (501) 868-2505

*Attorneys for the Plaintiff*

32

FILED

APR 1 4 2015

LONOKE CO. CLERK DAWN PORTERFIELD
BY

**IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS**
**PROBATE DIVISION**

IN THE MATTER OF THE ESTATE OF
LILLIE MITCHELL, DECEASED                               NO. 43PR-15-105

---

## ORDER APPOINTING SPECIAL ADMINISTRATOR

---

The Petition of Peggy Gyliene Kirkpatrick for appointment of a special administrator in the estate of Lillie Mitchell, deceased, is presented to the Court. Upon consideration of the Petition and the facts and evidence in support of it, the Court finds:

1.      No demand for notice of proceedings for the appointment of a special administrator of the estate has been filed. The Petition is not opposed by any known person, and it may be heard without notice.

2.      Lillie Mitchell, who resided at 400 Stuttgart Highway, England, Arkansas, died intestate at Hospice Home Care, Little Rock, Arkansas, on January 7, 2015.

3.      This Court has jurisdiction of this proceeding and venue properly lies in this County.

4.      Peggy Gyliene Kirkpatrick is a proper person by law to serve as special administrator of the estate.

5.      It appears there are no unsecured claims against the decedent's estate.

6.      The estate has no assets other than a potential personal injury/wrongful death action, and bond, therefore, is waived at this time. The Court will revisit the issue of bond should the estate acquire assets at any time.



EXHIBIT
A

**IT IS THEREFORE ORDERED** as follows:

a.     The special administration of the estate is opened;

b.     Peggy Gyliene Kirkpatrick is appointed special administrator of the estate for the limited purpose of investigating and bringing forth a personal injury/wrongful death action on behalf of the estate and the wrongful death beneficiaries of the decedent, to serve without bond;

c.     Letters of Special Administration shall be issued to this special administrator without the requirement of a bond; and

d.     Upon termination of the duties set forth above, Peggy Gyliene Kirkpatrick shall immediately make a full and complete report of hers actions and the condition and affairs of the estate to this court.

DATED this ___14th___ day of ___April_____, 2015.

_____
**CIRCUIT JUDGE**

Submitted by:

_____
H. Gregory Campbell (#92001)
**CAMPBELL LAW FIRM, P.A.**
One Information Way, Box 101
Little Rock, Arkansas 72202
Telephone No. (501) 372-5659
Attorneys for Estate

−2−

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PEGGY KIRKPATRICK, AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF LILLIE MITCHELL, AND ON
BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF
LILLIE MITCHELL                                                                    **PLAINTIFFS**

vs.                                    **CASE NO. _____**

CAVALIER HEALTHCARE OF ENGLAND, LLC d/b/a
CAVALIER HEALTHCARE OF ENGLAND;
LIMITED HOLDINGS, LLC; BETHEL INVESTMENTS, LLC;
And RANDY MCCHRISTIAN, in His Capacity as
Administrator of Cavalier Healthcare of England                    **DEFENDANTS**

### AFFIDAVIT OF RANDY MCCHRISTIAN

I, Randy McChristian, having been duly sworn state under oath that the following facts

are true and correct to the best of my knowledge, information, and belief:

1.      I am over eighteen years of age and of sound mind.

2.      I am the Administrator of Cavalier Healthcare of England.

3.      I have been employed by Cavalier Healthcare of England since January 21, 2015

as evidenced by the employment documentation attached hereto as Exhibit 1.

4.      I was not the Administrator of Cavalier Healthcare of England during any portion

of the residency of Lillie Mitchell.

Further affiant sayeth not

Dated this __11__ day of December, 2015.



Randy McChristian

JUDY DYKES
MY COMMISSION # 12378504
EXPIRES: September 14, 2020
Lonoke County



EXHIBIT
B

STATE OF ARKANSAS
COUNTY OF LONOKE

SUBSCRIBED AND SWORN TO before me, a notary public, this 11th. day of
December, 2015.


Notary Public

My Commission Expires: 9-14-2020

JUDY DYKES
MY COMMISSION # 12378504
EXPIRES: September 14, 2020
Lonoke County

# Employee Dates Report

## Company Code: HVD

| Last Name | First Name | Employee |
|---|---|---|
| Date | Description | |
| *McChristian* | *Randy* | *HVD000358* |
| 01/21/2015 | Hire Date | |



EXHIBIT

tabbies